Mel  Marin                    March 25, 2022
Box 601133
San Diego, CA 92160

```
┌─────────────────────────────┐
│         FILED               │
│   ┌───────────────────┐     │
│   │    Mar 25 2022     │     │
│   └───────────────────┘     │
│   CLERK, U.S. DISTRICT COURT │
│ SOUTHERN DISTRICT OF CALIFORNIA│
│ BY      s/ chafest      DEPUTY│
└─────────────────────────────┘
```

Plaintiff *Pro Se*

## IN  THE  UNITED  STATE  DISTRICT  COURT

## FOR  THE  SOUTHERN  DISTRICT  OF  CALIFORNIA

| | |
|---|---|
| MEL  MARIN,                )<br>                                        )<br>        Plaintiff,                )<br>                                        )<br> v.                                    )<br>                                        )<br> GROSSMONT-CUYAMACA,  )<br> COMMUNITY  COLLEGE   )<br> BOARD OF TRUSTEES,       )<br> AND  DENISE  WHISENHUNT, )<br> MARSHA GABLE, AARON    )<br> STARCK, LISA LUNDGREN,   )<br> PAT NEWMAN, LARRY        )<br> MCLEMORE, JOAN RETTINGER, )<br> BETH VIERSEN, VANESSA     )<br> SAENZ,                              )<br> IN THEIR  OFFICIAL AND    )<br> INDIVIDUAL CAPACITIES,    )<br> AND  THE  GROSSMONT-    )<br> CUYAMACA COMMUNITY    )<br> COLLEGE DISTRICT,            )<br> JOINTLY AND SEVERALLY,  )<br>                                        )<br>        Defendants.            )  | 22-cv-<br><br>**'22CV401  MMAJLB**<br><br>COMPLAINT<br>FOR  VIOLATION  OF  THE<br>1st AND 14TH  AMENDMENTS<br>TO  THE  CONSTITUTION O<br>THE  UNITED  STATES,  THE<br>CALIFORNIA CONSTITUTION<br>AT ARTICLE IX, SECTION 5, IV<br>SECTION 16, I, SECTION 7 AND<br>TITLE 5 SECTION 350 OF THE<br>CALIFORNIA ADMINISTRATIVE<br>CODE<br>AND<br>THE  REHABILITATION ACT<br>OF 1973<br>AND  FOR  RELIEF<br>UNDER  THE  CIVIL  RIGHTS<br>ACT (42 U.S. CODE § 1983)<br><br>JURY  DEMANDED |

1

## JURISDICTION

1. Plaintiff is a student in the defendants' college, and moves under a federal question giving jurisdiction to this court pursuant to 28 U.S.C. § 1331.

2. Defendants are all residents of this judicial district.

## GENERAL ALLEGATIONS

3. On January 3, 2022 plaintiff registered to be a student at defendants' college to start in that same term January 2022, and requested a disability accommodation for reading difficulty resulting from a car accident in July 2018, and also sought a fees status as a resident even if he is not a California resident under California AB540 that requires colleges to treat out-of-state residents as residents if they attended and graduated from a California high school.

4. The disability office failed to respond at all. But that *same day* after plaintiff left a phone message requesting a disability accommodation, the college responded by freezing plaintiff's access to the course materials housed in a computer program called Canvas.

5. The college did this as part of a custom or practice of harassing disabled students to prevent them from attending the college because they are a nuisance to the college administrative process that seeks to treat all students as if they are robot toys and do not think and do not live on earth and only come to life when the

2

college takes them off of the toy shelf to play with them and give tests; then they are treated as if they are dead and time does not pass until the next test.

6. On exactly 1:43 pm January 3, the course professor informed plaintiff that he was on hold because of absence of an assessment. That was a pre-text.

7. Plaintiff sent an inquiry to a college counselor by internet immediately, and supervisor Brienna from the Cuyamaca campus responded back immediately and said by internet message that there is no valid reason for an assessment block and she would check on it later.

8. The next day, Jan 4, the teacher herself approved removal of the hold and plaintiff was able to reach the class materials.

9. Three days later, Friday, January 7, 2022 the college testing center sent a message saying they are not ready to start processing disabled students for anything, and provided a phone number to call someone else to get in line for an appointment when they start business. No one answered. Plaintiff sent a message back saying no one answered. Staffer Theresa provided an email address instead. It was the wrong one. Then she provided a different address and said to wait.

10. So, the disability office does not even start taking appointments for the first week of classes. This is part of the custom and policy of preventing students from enrolling in 4 week classes for winter term since one lost week in a 4 week class creates a failing grade immediately. The college does this because the

3

disabled are a nuisance and they do not function like toys but require special things the college wants to avoid in order to redirect more money to pay the trustees themselves in salary.

11. Then plaintiff got a notice he was "flagged" and stopped AGAIN, this time for being a non-resident. This was because the college created their own rule to add to the state rule AB540 and prevent students from using AB540 as written. The college rule requires a student be a resident of California for 2 years before they are allowed access to the rights of AB540 of the California legislature.

12. The same day plaintiff sent a message to the admissions Dean Starck asking that they not paralyze plaintiff because his class is only 4 weeks and he was told he will be dropped next week unless he shows proof of California residency. He explained that he was entitled to be treated as a resident under AB540 whether or not he is a California resident. Plaintiff also sent to Starck his transcript from 2011 for the college to prove he was already awarded the AB540 status by this same college in 2011. The dean ignored plaintiff.

13. On January 10 the disability office informed plaintiff by message that he must make an appointment for a zoom session only, starting that day, and ignoring what plaintiff already tried to do several days earlier. Once plaintiff was able to reach that page for an appointment, several weeks were already filled days before, and the first opening was the week before the end of the class. That means

4

plaintiff would not be able to take any tests until the last week.

14. Plaintiff sought help from a new person in the admissions office and Lisa there sent back a message saying she was asked by Dean Starck to help and she will prevent plaintiff from being dropped the next week for lack of residency proof.

15. Notwithstanding that notice, the next week the college dropped plaintiff.

16. On January 18 at 2pm the teacher confirmed it was for some admin reason but could not help this time. So the class was over at no fault of Mel.

17. Three hours later staffer Linda informed the teacher the college through LISA  LUNDGREN did it because plaintiff did not show an actual California house address to prove actual present residency, and a California ID and his federal social security card, and needed to submit all of those to be admitted again.

18. This was an effective and actual refusal of the college to comply with the state law AB540, and also violated the federal law because it denied the California right to education because plaintiff did not submit his social security number.

19. Because these requests violated state and federal law they were unreasonable, arbitrary, and unlawful.   The refusal to honor the promise of the dean's staff not to drop Mel was also arbitrary and denied the process due because

5

Mel had a right to rely on the promise that he would not be dropped.

20.  After spending hours in legal research that destroyed the time he needed to study for the concentrated course, Mel responded by offering to bring at once his driver's license to someone to look at in the Grossmont College, but that he would not send a copy through the internet because the information on it was confidential and the internet is a public record and not secure.

21.  Mel cited a California Supreme Court case for the rule that the information on his drivers' license was confidential and he had no duty to expose it to the world through the internet: *Perkey v. Department of Motor Vehicles*, 42 Cal.3d 185, 203 (1986).

22.  Mel also informed LUNDGREN, GABLE, and STARCK on January 18, 2022 that it was illegal of the college to deny his right of education for failing to present his social security number, and for this rule he cited the federal Privacy Act of 1974: "(a)(1) It shall be unlawful for any Federal, State or local government agency to deny to any individual any right, benefit, or privilege provided by law because of such individual's refusal to disclose his social security account number." U.S. Privacy Act of 1974.

23.  And he already informed all of them that he had no duty to have a California residence under AB540.

24.  On January 19, 2022, Mel scanned and sent his birth certificate and a

court order shortening his name in lieu of their demands for two different identifications in two different names.  And he also scanned and sent a college ID from Grossmont College that the college issued to him in 2011 with the long version of his name and picture, and also scanned and sent by internet his college ID from 2020 from San Diego City College with his picture and short version of his name.  Because both colleges are state colleges, those ID s were and are government cards with the same legal status as a state driver's license, under the rule in *Benner v. Oswald*, 592 Federal Law Reporter 2d 174, p.179 at [2](3d Cir. 1970)(if a college is a state college then *all* of its actions are state actions).

25.  But the defendants refused to accept the state college's cards as government issued cards.  This was widely arbitrary.

26.  The defendants did this to continue the deliberate retaliation against Mel for his request for disability accommodation, and later for his refusal to obey the new rule used as a pre-text to punish his disability, to produce proof of California residence that they added to the rule in AB540 which they may not do under the law according to the federal court in *Service Employees Intern Union, AFL-CIO v. FPPC*, 721 F.Supp. 1172, 1178 (E.D. Cal. 1989)(under state law, "administrative regulations that alter or amend the statute or enlarge or impair its scope, are void.").

27. Because of these citations of the law, LUNDGREN, STARCK, and GABLE and, by the doctrine of *respondeat superior* the college itself, knew or should have known their demands were unlawful and, therefore, none of these defendants had qualified immunity for their conduct normally allowed to government officials who act in good faith to follow legal regulations. Therefore, they are all personally liable in their personal capacities for these unlawful *ultra vires* acts and have no immunity.

28. Instead of backing down from the illegal and widely unreasonable demands, and accepting Mel's birth certificate and 2 college cards and a court order and willingness to appear in person to show a driver's license as well, LUNDGREN and the college demanded again that he send a government ID through the internet and added a new demand, that he produce his social security card too.

29. Mel wrote back showing that social security demand was illegal but they refused to lift that new restriction.

30. A formal complaint like this one was then sent to the college president and the trustees and they failed to remedy. They failed to stop this stubborn demand of LINDGREN to amend the state statute AB540. They refused to accept the college cards with all the information the college was entitled to review. They refused to stop the illegal demand for a social security card. They refused to

8

reinstate Mel to his class. And they caused Mel to lose another full day of school work by taking a full day to draft a court complaint.

31. Thus, this was a stubborn and illegal vendetta by LUNDGREN against Mel. Each of them had the power and duty to stop this vendetta and they refused, in order to continue the retaliation.

32. Therefore, they all acquiesced in and joined the *ultra virus* campaign of LUNDGREN against Mel, making each and all of them personally liable for Mel's losses under the rule in *Witco Corp. v. Herzog Bros. Trucking, Inc.*, 580 Pa. 628, 640, 863 A.2d 443 (2004) (acquiescing in the questionable conduct made the bank a "full player" in the improper conduct and "not an innocent bystander").

33. Because these other defendants are supervisors of LUNDGREN they also demonstrated deliberate indifference by government officials:

> Larez v. City of Los Angeles, 946 F.2d 630 (9th Cir.1991),
> we explained that to be held liable, the supervisor need not be
> "directly and personally involved in the same way as are the
> individual officers who are on the scene inflicting constitutional
> injury." Id. at 645. Rather, the supervisor's participation could
> include his . . . acquiescence in the constitutional deprivations of
> which the complaint is made," or "conduct that showed a reckless
> or callous indifference to the rights of others."

*Starr v. Baca*, 652 F. 3d 1202, 1205-06 (9th Circuit Court of Appeals 2011).

34. In the last week of the winter term the college disability office still would not permit an "in-take" interview, but the college did reinstate Mel to the

history class.  And they only did so on the condition that Mel physically appear at the college and show the Dean of Admissions his driver's license from any state, which he did.   Dean Starck then met with Mel and told him he will be reinstated and could continue without fear of more of the same problems.

35.  The professor then allowed him to do all his missing assignments in the last few days without a time limit on testing to avoid slow reading problems, and he finished the class.

36.  But to continue the harassment for Mel's disability, the college refused to allow him an appointment at all in the winter semester for a reading accommodation.

37.  Mel then registered at the Cuyamaca campus for spring 2022 on January 31, 2022 governed by the same trustee defendants for an economics class, because it was the only class left that he could take that was not full.

38.  This time, however, the new teacher placed a strict time limit on testing and agreed to delay tests for plaintiff until after he gets additional reading time as recommended by the disability office.

39.  But rather than giving Mel a priority date for the interview since he had already signed up on a waiting list in January, the college informed Mel he to start over because they do not start operating their office until the new semester starts.

40.  But when he tried to get a new February 2022 appointment date, he was

told *on the first day* of classes that all the appointments were already booked by other students and that he was behind some waiting from last semester for an appointment.

41. So, the college gave early appointments to others waiting since winter semester for an appointment, but did not allow that same privilege to plaintiff, and they did this to punish plaintiff for submitting a formal complaint on January 19 to these defendants.

42. Instead, they gave Mel a disability appointment making him wait a *month*, until February 29, not days.

43. Mel informed the staff at the interview that his class was in the Cuyamaca campus and they said that is okay because that campus has all the same records as the Grossmont campus so it does not matter. After an hour in the Zoom meeting, after the counselor acknowledged receiving multiple medical records showing a need for several times more time for test taking because of eye injuries, the counselor refused to direct the accommodation of extra time plaintiffs physician requested *or any other additional minutes*, saying he will leave it to the teacher to do. The counselor was not a doctor. He said at the start that he had no medical training at all. He did not challenge any of plaintiff's medical records. He did not present them to any other person. He just refused to grant a meaningful accommodation for plaintiff's disability.

11

44. The disability counselor did this as part of the college's custom and practice of harassing the disabled to show them that cannot succeed in this college under these trustees, to push them out.

45. Then, when plaintiff asked what the appeal process is, the counselor told Mel he should never have made the appointment because Mel's class was at Cuyamaca campus and the counselor was at Grossmont.

46. Mel then made another appointment at Cuyamaca, and was finally awarded extra time for test taking on March 7, 2022, three weeks before the end of the 8 week class, thereby denying Mel 5 weeks of work in the class. That counselor also confirmed in a recorded session that the Grossmont and Cuyamaca campuses are the same school and have the same computer access so nothing should be missed at Cuyamaca that was done at Grossmont.

47. At the same time Mel petitioned another teacher to join her class one (1) week late, and the teacher refused, saying the loss of one week is devastating for a student and ruins their chances of doing well because they never recover from that one week loss.

48. The college imposed this 5 week delay intentionally to cripple the crippled.

49. Mel then tried to make-up for 5 lost weeks in the last 3 weeks.

50. By March 20, 2022, two weeks later, he was able to take 2 out of the 4

tests the course required.

51.  However, on March 21, 2022, in the last week (the last one as of this filing) seeing that he was about to succeed in the last week of finishing the class, the college dropped him from this second class AGAIN, to prevent him from succeeding and to impose an F grade to ruin his graduate school chances.   That also barred him from his email exchange with the college and all grades, to destroy the evidence for this legal action.

52.  Defendant Vanessa Saenz said she did this because they just discovered plaintiff was registered years ago under a different name and wanted to stop him and start over.   She demanded again his social security card and a California driver's license to prove residency in California.

53.  However, on January 7, 2022 plaintiff provided his transcript for that prior registration in 2011 with a longer version of his name to the Dean of Admissions Starck as alleged above and he said this college had that same record, so the college did not "just discover" the name change on March 21.  Instead, they knew about it for two and one-half months ( 2 ½ ) and they decided to use it as a fake pretext to cripple crippled, again, after the first attempt in February did not work completely.

54.  The college did this to harass Mel for being disabled and to retaliate against him for submitting complaints against these defendants to these defendants

13

themselves on January 17, 2022.

55. In addition, to cement the punishment against Mel, the college changed the college contract to stop him from trying again.

56. When he tried to "log-in" to the college site on March 21, 2022, the college imposed a new page that requires the student represent that by reaching the class materials he will be "completing all work" with that one session. Not two sessions. Not next week. But everything at once.

57. Because plaintiff does not have that capacity to do all the missed work in one session, that agreement would constitute perjury since this is a government college and a knowingly made false statement to the government is always perjury. That prevented Mel from reaching anything at all.

58. When he asked his teacher for an incomplete designation earlier this week, she refused. She said only that we would "work with you on that".

59. When Mel gave notice to these defendants and the college superintendent of these new retaliatory acts, and explained this new perjury page, the teacher ignored the perjury page as if it were not there, and informed Mel on March 23, 2022 as the defendants' rationale for refusing an incomplete so he could have those missing 5 weeks later to finish, that he could have done all the preparatory work all along and that he could have done work starting on March and that he had 3 more days to take the final tests and the additional assignments

that every other student had 5 *weeks* to do.

60. In other words, the teacher on behalf of these defendants indicated that the disabled student who can barely read straight should have been able to do 8 weeks of reading and testing in 3 weeks, at twice the speed that healthy students require as the reason for denying the "incomplete" and imposing an F grade to ruin his professional life.

61. That rationale for the refusal is widely unreasonable, arbitrary, and intentionally punitive to punish plaintiff for asserting disability rights and due process rights to which he is entitled under federal law and California law.

62. The teacher indicated in her denial on March 23, 2022 that her denial was directed by defendants Pat Newman, Larry McLemore, Joan Rettinger and Beth Viersen.   She put their names right in the message to make it clear they orchestrated her denial.

63. Those persons are the supervisors and intermediaries to the other named defendants in this action, so that the other named defendants WHISENHUNT, MARSHA GABLE, AARON STARCK, LISA LUNDGREN, and THE GROSSMONT-CUYAMACA COMMUNITY COLLEGE DISTRICT, are the alter egos of PAT NEWMAN, LARRY MCLEMORE, JOAN RETTINGER AND BETH VIERSEN.

64. This prior presentation to the offending state agency also satisfies Cal.

15

Gov. Code §905.  Their continuation of the harassment and refusal to effect remedy since January 17 constitutes denial.

# FIRST  CAUSE OF ACTION

## FOR  VIOLATION  OF  THE  14ᵀᴴ  AMENDMENT

## TO  THE  CONSTITUTION  OF  THE  UNITED  STATES

### (Denial of Procedural and Substantive Due Process)

65. All prior allegations above are incorporated into this cause of action by this reference.

66.  AB540 is the short term used by the California colleges to refer to the Education Code § 68130.5 which allows non-residents of California to be treated as residents for tuition purposes.   Plaintiff passed that test at this college.

67.  Under rules of statutory construction it would be absurd for a non-resident to be treated as a resident for tuition purposes so the student can attend California colleges and pay low fees but also deny them the right to attend and reach that benefit because they are not residents, and no agency may interpret the law in such an absurd way, according to *Smith v. Superior Court*, 39 Cal.4th 77 (2006)("we choose the construction that comports most closely with the Legislature's apparent intent, endeavoring to promote rather than defeat the statute's general purpose, and avoiding a construction that would lead to absurd

16

consequences.").

68.  Therefore, the demand for more information from this student than state statute requires, is an attempt to modify or add to the statute which is unlawful.

69.  Additionally, California courts have followed legislative direction to treat students sleeping in parks in vehicles and not homes as residents, as in *Collier v. Menzel*, 176 Cal. App. 3d 24, 29-30 (1985).

70.  Since the California DMV will not issue a driver's license with a park address, the demand by this college that plaintiff present a driver's license with a residence when state statutes and case law do not require it, is also an illegal attempt to create new law where it does not exist.

71.  And the California Election Code also does not require either a home or a driver's license to establish residence according to the California Supreme Court in *Walters v. Weed*, 45 Cal.3d 1, 21  (1988)(""Residence in a trailer or vehicle or at any public camp or camping ground may constitute a domicile").

72.  Because these defendants refused to treat Mel as a resident as AB540 requires and attempted to amend the state law to add duties the legislature did not want, they denied Mel a process that was due to him, and that constituted a denial of due process protected by the 14th Amendment of the Constitution of the United States.

73.  Additionally, this execution of punishment of Mel merely because he

sought to do an act that he was plainly entitled to do, which is to complete his classes with the protection of AB540, also constituted a prima facie denial of due process, according to *Bordenkircher v. Hayes,* 434 U.S. 357, 363,  98 S.Ct. 633, 668 [3], 54 L.Ed.2d 604 (1978)  ("Penalizing a person for doing what the law plainly allows him to do is violation of due process of the most basic sort.").

74.  This campaign to punish Mel by making him suffer for his trying to obey the law was intentional and outrageous, and constitutes a "true abuse of power" as defined by the California court in *Las Lomas Land Co., LLC v. City of Los Angeles,* 177 Cal. App. 4th 837, 855-56 (2009)("A substantive due process violation requires more than 'ordinary government error' . . . A substantive due process violation requires some form of outrageous or egregious conduct constituting 'a true abuse of power.'").

75.  This expulsion of Mel from two (2) classes because he wanted to obey the law and had a right to attend without proving a California license hurt Mel because it prevented him from finishing a course he needed to have finished to apply for another college which would lead to a license to work which would have generated $150,000 in salary a year, and this law suit will now take 2 years to reach a verdict by a jury agreeing that this retaliation was outrageous, and that denied Mel $300,000 in salary.

76.  Because the defendants' conduct described above was an actual or

proximate cause of that loss of 2 years of life and salary, they are liable for the full

cost of that delay under the rule in *Colvig v. RKO General, Inc.* , 232 Cal.App.2d

56, 42 California Rptr. 473 (1965)(a sufficient allegation of damages is made for a

jury by claiming a loss of $250,000 for being stopped from a career as a radio

announcer), and *Bowers v. NCAA*, 475 F.3d 524 (3d Cir. 2007)(student athlete

may state claim for loss of entire career by denial of athletic participation even

though he never took classes because he was wrongfully stopped early).

77. On the day of the last expulsion, March 21, 2022 Mel was an "A"

student in the economics class. Therefore, there was a virtual certainty he would

have finished the class successfully and gained admission to a school of his choice

if he were allowed the full 8 weeks like other students.

78. But for this vendetta of the defendants Mel would have finished the

course and gained the admission he sought.

79. Additionally, the violation of a constitutional right of due process by

itself entitled a plaintiff to damages as a jury may allow regardless of actual losses

or out of pocket losses, under the rule in *Baker v. National State Bank,* 353 N.J.

Super. 145, 165, 801 A.2d 1158, 1170 (2002)($1.8 million verdict for violation of

substantive due process rights upheld regardless of the actual loss to plaintiff).

80. WHEREFORE, Mel seeks and is entitled to compensatory damages of

$300,000 against each defendant individually in their personal individual

capacities for the loss of salary, and for $1.8 million for the outrageous and stubborn denial of due process as a compensatory constitutional award, and for another $1 million in a punitive amount against every defendant individually except he does not seek punitive damages against the college district itself.

## SECOND CAUSE OF ACTION

## FOR DECLARATORY JUDGMENT, INJUNCTION, AND DAMAGES ( UNDER THE REHABILITATION ACT OF 1973, THE 14TH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES AND THE CIVIL RIGHTS ACT )

81.  All prior allegations above are incorporated into this cause of action by this reference.

82.  These defendants named in this cause of action violated Section 504 of the Rehabilitation Act of 1973, and 29 United States Code Section (§) 794, and its implementing regulation at 34 C.F.R. Part 104, which prohibits discrimination on the basis of disability by recipients of federal financial assistance, as implemented at <u>Re: Abilene Christian University</u>, Nov. 7, 2017, Office of Civil Rights (U.S. Department of Education). Resolution Letter, 06-17-2260, p. 1, ¶ 2 in the following ways:

83. First, the defendants fail to allow students to begin the process of seeking accommodation until *weeks* after the semester starts rather than start the process weeks before the semester starts as they have the capacity to do and do for military veterans. They do this intentionally, to discourage the disabled from coming to their college, knowing they cannot possibly generate accommodations for weeks and that the students will be forced to drop classes after one week because their chances are ruined after one week.

84. Second, they understaff the disability office to intentionally avoid helping the disabled to reach meaningful access to the right of education guaranteed by the California Constitution.

85. Third, they order disability counselors to refuse to obey federal law and to disregard medical records and requests of licensed physicians that seek accommodations for reading greater than twice the time because the college arbitrarily set 2x as a limit for ease of administration, thereby violating both the act cited above and the due process clause of the 14th Amendment as described at *Frontiero v. Richardson*, 41 U.S. 677, 690 at [9], 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) (administrative convenience does not dictate constitutionality because "although efficacious administration of government programs is not without some importance . . . the Constitution recognizes higher values than speed and efficiency").

86. Fourth, as described above, they attempt to delegate the unfettered discretion to obey federal law to individual teachers with no guidelines or limits, which the agency has no power to do and which violates due process as described at *Connally v. General Construction Co.*, 269 U. S. 385, 391 (1926) ("[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law").

87. Fifth, as described above, they retaliate against students who assert their rights to meaningful accommodations, by denying them access to the college, delaying their start of work to cripple their chances, and denying incomplete grades as pretexts for imposing F grades that they intend to use to ruin the student's career, in violation of the act above and the 1st and 14th Amendments to the Constitution, as in *Davis v. Goode*, 995 F.Supp. 82, 87 [3](E.D.N.Y. 1998) (school's adverse treatment of student because he complained, states a cause of action for violation of the equal protection clause of the 14th Amendment for retaliation against the exercise of a constitutional right to complain).

88. WHEREFORE, as to this cause of action Mel seeks and is entitled to damages in the amount of $300,000 for the salary he could have made, and $ 1 million for punitive damages against the breathing defendants and $1.8 million for loss of his constitutional right of education by sabotage against all defendants.

## THIRD CAUSE OF ACTION

## FOR MANDAMUS FOR VIOLATION OF THE 14TH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES

### (Section 1085 California Code Of Civil Procedure, 42 U.S.C. § 1983)

89. All prior allegations above are incorporated into this cause of action by this reference.

90. These additional duties the defendants imposed to prevent application of AB540 unless plaintiff also proves existence of a home in California and a driver's license with that home address, and reveals that confidential record to the public by an internet transmission, and submits social security number are all blockades and laws created by these defendants who are state government actors and because those laws were never created by any legislature, they are unwritten laws of these defendants and are illegal.

91. These barricades describe above to punish the disabled also denied meaningful access to education arbitrarily or intentionally.

92. The California Code of Civil Procedure allows injured parties who are prevented from reaching the benefits of state laws to petition for writ of mandate to force the state actors to comply, according to *California Homeless & Housing Coalition v. Anderson,*31 Cal.App.4th 450, 458 (1995).

93. Because that state statute gives that right, it creates a right of

23

dueprocess enforceable in a *federal* court under the 14th Amendment, so Mel automatically has a right to an injunction to reach that process, as held in *Carlo v. City of Chino*, 105 F.3d 493, 495 [4](9th Cir. 1997)(statute which mandates a process that is due, when denied can establish a violation of due process under the 14th Amendment of the U.S. Constitution and form the basis for a claim under the Civil Rights Act).

94.   Additionally, both the actors in their personal capacities and the college can be sued under §1983, according to *Cohen v. San Bernadino Valley College*, 92 F.3d 968, 972  (9th Cir. 1996)(A community college and/or its administrators are proper defendants for injunctive relief or damages under §1983).

95.   WHEREFORE, Mel seeks and is entitled to an injunction barring these defendants from continuing their vendetta and requiring their additional proofs from Mel before he can continue his class which would otherwise be over in one (1) week.   In other words, these defendants imposed a loss of two full years of time and money on plaintiff when he would have finished in one week.  That is ridiculous as well as outrageous – to prove they are in command and have the power to crush anyone who does not obey their illegal extra steps.

# FOURTH CAUSE OF ACTION

## FOR VIOLATION OF THE 14TH AMENDMENT

## TO THE CONSTITUTION OF THE UNITED STATES

### (Deliberate Indifference)

96. All prior allegations above are incorporated into this cause of action by this reference.

97. Defendant GABLE knew exactly who plaintiff is because she was an officer at a different San Diego court who corresponded with Mel in a dispute he had with her and that college for refusing to grant an adequate accommodation in 2020 for his disability as required by the federal Rehabilitation Act. She is also named in a law suit Mel filed against her and that college for that violation in the federal court and which is ongoing.

98. Therefore, because GABLE is the supervisor of both STARCK and LUNDGREN, and had the power to stop their punishment and refused to do so, and because she personally had the power to verify Mel's identity and refused to do so, she is guilty of being deliberately indifferent to the harm visited upon Mel by her subordinates and her acquiescence in their conduct proves she wanted to punish Mel for previously suing her for her prior illegal acts in the federal court into which this case is submitted.

99. Mel was injured by her deliberate indifference as described above.

100. The college president and BOARD OF TRUSTEES also acquiesced in her indifference because they all are deemed to have received this complaint since they are in hiding and require all communication by internet, and they did nothing to stop her and her team from continuing the punishment.

101. Nor can they come later and argue fairly to a jury that these losses of $1.8 million and $1 million and $300,000 were not foreseeable, because this complaint expressly tells them of these losses before it is too late to avoid some of the harm.

102. WHEREFORE, Mel seeks and is entitled to compensatory damages of $300,000 against each defendant individually for the loss of salary, and for $1.8 million for the outrageous and stubborn denial of due process as a compensatory constitutional award, and for another $1 million in a punitive amount against every defendant individually except for the college district itself.

## FIFTH CAUSE OF ACTION

## FOR VIOLATION OF THE 1ST AND 14TH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES

### (Retaliation)

103. All prior allegations above are incorporated into this cause of action by this reference.

104. The defendants imposed the additional requirement of revealing the social security number to "chill" plaintiff or stop him from continuing to insist on his constitutional rights if "he knows what is good for him". It was intended to stop a person of ordinary firmness from continuing to insist on following the law as written, for fear he would never get anywhere unless he obeyed.

105. That new restriction was plainly illegal as well:

(a)(1) It shall be unlawful for any Federal, State or local government agency to deny to any individual any right, benefit, or privilege provided by law because of such individual's refusal to disclose his social security account number.

U.S. Privacy Act of 1974.

106. To reach a jury award it is not necessary to show the jury that the loss was major or the punishment life-shattering. It is only necessary to show the government actor imposed retaliation of even a small degree to show their displeasure with the plaintiff's exercise of a right to object or complain, according

27

to the Supreme Court of the United States in *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 75-76, 110 S.Ct. 2729, 2738, 111 L.Ed.2d 52 (1990)(the denial of even a trivial benefit "as failing to hold a birthday party for a public employee . . . when intended to punish her for exercising her free speech rights" may state a claim under the 1st Amendment).

107.  Therefore, these defendants have violated Mel's 1st Amendment right of free speech, and since he was entitled to that speech and it was punished, they also violated his due process right under the 14th Amendment and he is entitled to a separate jury verdict for that violation in addition to the ones above, as in *Baker v. National State Bank*, 353 N.J. Super. 145, 165, 801 A.2d 1158, 1170 (2002)($1.8 million verdict for violation of substantive due process rights upheld regardless of the actual loss to plaintiff).

108.  WHEREFORE, Mel seeks and is entitled to compensatory damages of $300,000 against each defendant individually for the loss of salary, and for $1.8 million for the outrageous and stubborn denial of due process as a compensatory constitutional award, and for another $1 million in a punitive amount against every defendant individually except for the college district itself.

## SIXTH CAUSE OF ACTION

## FOR NEGLIGENT FAILURE TO SUPERVISE

### (State Common Law)

109.  All prior allegations above are incorporated into this cause of action by this reference.

110.  Under California Education Code §44807, these defendants had a duty to plaintiff to supervise their controlled officers to make certain they were not creating and executing regularly a custom and practice of violating the laws or imposing an arbitrary administrative limits on the right to education.

111.  And Gov. Code §815.6 provides when the state agency has such a duty, it is liable for the injuries proximately caused by neglecting that duty.

112.  These defendants breached this duty toward this plaintiff.

113.  They were fully aware of these violations as they occurred because Mel put it in writing and sent it to them before it was too late.  They knew.  They watched it all unfold.  They failed to stop it.

114.  Mel's losses that he describes herein were foreseeable because in those letters he said essentially "do not come later and say these losses are not foreseeable.  I am making them foreseeable now."  Yet they all refused to act.

115.  Therefore, Mel has satisfied the requirement of Gov. Code §910 naming the employee causing the loss, and he filed his claim in this form as

required by Gov. Cod. §950.2 before filing in federal court.   They failed to remedy.

116.  This failure to supervise was an actual and substantial and proximate cause of this delay, this harm, and these denials of civil rights of this plaintiff.

117. Mel was injured by this refusal to supervise because but for that failure he would not have lost that class, and this time.

118.  Therefore, Mel has satisfied the requirements of the Tort Claims Act.

119.  WHEREFORE, as to this cause of action Mel seeks and is entitled to damages in the amount of $300,000 for the salary he could have made, and $ 1 million for punitive damages against the breathing defendants and $1.8 million for loss of his constitutional right of education by sabotage against all defendants.

120.  This complaint is verified.


DATED:   March 25, 2022                                   _Mel M_
                                                          Mel   Martin